Good morning, Your Honors. Kenneth Brooks on behalf of Appellant V.V.V. & Sons Edible Oils Limited. Counsel, I'll be honest with you. You have an uphill battle here because it appears that the Ninth Circuit, prior Ninth Circuit decision specifically said that two of the marks that you are seeking to have addressed here, the that determination by the prior appeal? Well, this is what I find perplexing. My arguments are based on statutory law, the Lanham Act. The opposition filed by the appellee is based on federal common law. Now, I've always... The court's already decided the issue. Does it matter whether it was under statutory law or common law? It does when you consider the interpretation of the mandate, which is what this case is all three marks stand or fall together. And that's not how it was presented on the prior appeal. And so that's the law of the case at this point. We can't rewrite the facts at this point because the Ninth Circuit has previously considered this case and only the 64 mark was presented at that point. The 654. 654. Well, I attempted to present the arguments on the 000 and the 172. But weren't those already waived at the district court level? Well, I didn't consider them waived. If you look at the interpretation of the mandate, let me start by reiterating that it was all parties' position that all three marks stood or fell together. And you can look at the case record, and I'm looking at the declaration of... That was the party's position. Why did the appeal go forward only on the 964 mark? The 654, yes. I'm sorry, 654. Because there was a threat of sanctions. Rule 11 says you can't make frivolous arguments. And the law of the case, when that summary judgment motion arose, was that the 654 mark was out because of res judicata. Where is the threat of sanctions in the record? Oh, I briefed it. I mean, the... But I mean, you briefed it. But where in the record can we go to see that the district court threatened you with sanctions? In the footnote of the judge's order, which is recited in here after I attempted to amend the complaint to include the cause of action for fraud, and the sanctions were actually filed, and I explained to the... But that was as to fraud. That wasn't as to the validity of the marks. That was because of the type... I kept arguing that res judicata didn't apply. So when you take that and you realize that all parties agreed that the three marks lived and died together, it would have been a violation of Rule 11 to make those arguments again. And there was no way I was going to draw the ire of Judge Nunley. But I mean, I'm a little fuzzy here. If you were losing on the 654 and they stood and fell together, why did you have to say no opposition? Why didn't you just say, fine, rule against us and we'll send it up to appeal? Because I thought I had to file... Well, because I was condoled by the other party. You were what? Condoled. They kept threatening sanctions and sanctions. Well, but... Well, but we're talking about the interpretation of the mandate now. So... The mandate, to me, is clear. If the 654 mark survives and the defendant gets... or the appellee, defendant, gets to keep control of the triple zero and the 172, we're now violating the Lanham Act, which makes clear to the Supreme Court is to protect the public. But the district court said the 172 mark and the 000 mark are out. But there's been a change of law. I mean, the reason they were out, the whole argument that those were out, is because of the 654. And because the marks... It wasn't. Not in the mandate. It wasn't because of the 654, it was because the 654 survived. Right. So now there's a change of law, though, based upon the mandate. What's the change of law? The mandate. The res judicata, as applicable to the 654, no longer applied. You might be right, but the Ninth Circuit said, we're going to send the 654 back, so you should have been happy. But these other two, there was non-opposition. Now, maybe that was wrong. You know, maybe you should have gone for cert from that. Or en banc. Right, or en banc or something. En banc or something. I'm already dealt with this. But my understanding is, you're still proceeding. You may be winning on the 654 mark. I guess if you win something on that, and they stand and fall together, are you just as well off? Or is there some reason that winning on 654 and not on the other two is really damaging to you? Well, it's damaging in the fact that one of them is identical. It's a word mark. And it's I believe it's 172. That's a word mark. The other one is a form mark. The dominant term on it is the word mark idiom, which is what the 654 mark is. However, we can expand now into other products because the special form mark and the, yeah, both marks deal with things other than the gingerly oil, which is sesame seed oil. And so the client, VVB, does make other goods. So now we can't expand without having to go to the director. I mean, there is an administrative proceeding that we could use that was a backup and ask the director, hey, look, as a matter of public policy, knock this out. However In the end, you win on the merits, whatever the merits are, and I take it they're still going on in the district court. Yes, Your Honor. That says that your side is right and their side is wrong. Again, I have a little trouble seeing where the real harm is, but even so, isn't the issue that the Ninth Circuit for right or for wrong, as Judge Rollinson said very clearly, said what it said. And for the district court to say, oh, let's resurrect these other two, wouldn't that have flown directly in the teeth of the mandate? Well, that, I mean, if you look at the case law, it's quite clear that you can look beyond the words of the mandate. You have to look at what the mandate, the spirit of the mandate in the posture of the case. And the spirit of the mandate is, hey, look, the res judicata had nothing, cannot stop the adjudication of the 654 mark, and the other two marks are premised. What case says that we should look at the spirit of the mandate when the language of the mandate is, I mean, which it is here? I have to be frank that I don't understand why we're here. I don't understand. I don't understand these arguments. It's Firth v. United States, 554 F2D 990, and they're quoting other cases from the Ninth Circuit, Lindy Penn Company v. Big Penn Corp. 982 F2D 1400, and another case, I mean, Sanford v. Sanford. Did you want to save time for rebuttal, counsel? Yes, Your Honor. All right. Thank you, counsel. Thank you. Good morning. May it please the Court, I'm Richard Mandel of Cowen, Liebowitz, and Lappman for the appellee, Menakshi Overseas. Your Honor, the mandate is absolutely clear here that the 000 mark and the 172 mark, that those claims against those marks were dismissed, and they were dismissed not because of any ruling on claim preclusion, but because the claim was dismissed in the district court, and basically conceded that the motion should be granted, and so what the Ninth Circuit said on appeal is it affirmed in part and it reversed in part. As to the 654 mark, it said the district court had gotten it wrong on application of claim preclusion, and as to the other two marks, it very clearly said your contention that that was based on a mistaken application of claim preclusion is just not correct. That dismissal was based on your failure to oppose a second motion to dismiss. Now, Mr. Brooks says that he was under threat of sanctions, and that may be the case, but that's the same argument he made to the Ninth Circuit the first time. We've had this exact issue argued, briefed, and decided. It may not be the focal point of the first appeal, but it was certainly raised, and we cited, I believe it's page 23 to 24 of his opening brief in the Ninth Circuit the first time, made all these arguments saying we were under threat of sanction, we thought we were going to be prejudiced in the district court, and so I had no choice basically but to not oppose, and as a result, ended that argument by saying thus, the dismissal of those, as to those two marks was, you know, based on the erroneous claim preclusion argument, and the Ninth Circuit said absolutely that is not correct. So we've heard all this before, and it's been ruled upon, and under law of the case, there's really no reason to change it. There are only three grounds on which you can reach a different result this time around under the Ninth Circuit case law. New evidence, which is not present, a change in law which does not exist, because the change in law he's talking about is the Ninth Circuit ruling itself, but there had already been a waiver before the Ninth Circuit ever reached this issue, so there's no change in law, and the claim preclusion decision by the Ninth Circuit didn't impact the waiver, and the last ground is if the decision was clearly erroneous and would work a manifest injustice, and that's clearly not the case, because the decision is actually right. I mean, what the Ninth Circuit said is a non-opposition waived any challenge to the dismissal. Now, I understand what Mr. Brooks is saying. He could have clearly just said to the district court, look, we disagree with your ruling on the 654 mark, and we continue to believe that our ownership of the idiom trademark gives us the right to go forward. We've made those arguments. We refer you to them. We stand by them and preserve them, but if the district court is going to stick with that decision, we have nothing else to add, and he would have reserved his position. He didn't do that. He put in an opposition, a non-opposition that basically said, you know, we're very eager to get to the Ninth Circuit. We want to speed that up, and this is a complex area of the law, and therefore, we don't oppose it, and that's not the same thing. That's different from just saying, here are our arguments from before. Please rule against us. Absolutely. And that happens in all sorts of litigation. Absolutely, and, you know, the law is clear. I mean, he may regret now his decision, and he may feel it would have been better had I preserved my position, but that's not what he did, and litigants are stuck with the decisions that their counsel make. It was a tactical decision, and not to be, you know, I understand, you know, it's easy in hindsight to say, oh, you know, I got it reversed, and I wish I had all three marks, but, you know, the wasn't even argued. If you look at footnote two of their decision the first time around, you know, they said there was an exception to claim preclusion because of the difference in damages not being available in the TTAB, so even though the three elements of claim preclusion were met, and even though it was a default judgment, you know, that would have all been enough, but because of that exception that there weren't damages available, it said that there's an exception, and claim preclusion doesn't apply. That wasn't an obvious decision that that was going to occur, and Was the opposing counsel right about the effect of not being able to attack the other two? That is, if I guess your side loses game, set, and match on 654, are they really damaged by not being able to attack the other two? Well, I think there are differences. I mean, that's going to remain to be played out in the district court, but for example, the 172 mark is different goods, so I think the fact of the matter is it's been decided that we own the trademark for those goods, and even if those goods were close enough that under ordinary principles of trademark law they would create a likelihood of confusion, they're sort of stuck with that, and the other mark is a slightly different mark. It's a design component that does include the word mark, but it has other design elements, and we would submit that it also includes products beyond sesame oil, and we would submit that under the decision that's been reached that that's also been decided, basically, that as to that formative version of the mark on those goods, we have prevailed. But opposing counsel said that the parties agreed that all three of the marks rise and fall together, so if the 654 mark survives, then the other two survive. What's your response? I don't think that's correct. I mean... Did you all agree that they rise and fall together? I don't think we agreed in the sense of ever stipulating to that. I think the parties might have believed that under trademark law that would be a common result, that it would be probable that the outcome would be the same for all three marks if we're looking at it just as a matter of substantive trademark law, but the reality is that, you know, this happens all the time. I mean, that plaintiff trademark owners settle cases, and they may allow certain uses, and after the fact there may be actual confusion, and they may want to rescind the contract. We don't generally let them do that. You know, the fact of the matter is it comes down to this. There was a motion to dismiss made as to the 172 and the 000 mark, and plaintiff, you know, should have known that by conceding that he was essentially giving up on that. I mean, I think that was pretty obvious that if you put in a non-opposition to a motion to dismiss claims against those marks, you're basically accepting that you've lost on those marks, and, you know, that was his decision, and that plaintiff is stuck with the consequences of that even if they may not like that. That was their decision, and, you know, again, to put it in context, it was a tactical decision driven by two marks, as he actually said in the non-opposition, and as he argued to the Ninth Circuit the first time, a desire to improve the posture of the case in the district court. He was concerned that the judge had been angry and maybe had said some things that were negative about some of his positions, and, you know, we've all been in that position where things are not going so great. You have some adverse rulings, and you have to make tactical decisions how to deal with that, and this is the tactical decision that he made, and he is stuck with the consequences of that, and so is his client. Unless the panel has any questions for me, I have nothing else to add. All right. It appears not. Thank you, counsel. Mr. Butler? With respect to the stipulation, I draw the court's attention to Volume 3, these excerpts, page 372, line 15, to page 373, line 6, and paragraph 9 of their attorney's declaration, which stated what we had just argued, that the marks live and die together, and that's paragraph 9 on page 377 of the excerpts. With respect to this being about the threat of sanctions, the fact remains, the Lanham Act controls, unless Article 6, paragraph 2 doesn't apply, I really don't know. I thought federal common law. All the arguments based on the ---- Are you saying statutory law must yield to common law? No. Or vice versa. It sounds like what I'm hearing here is, hey, the Ninth Circuit decided that's it, and that's why ---- That's true. Except when I point out that if you interpret the mandate as opposing counsel states, then we're violating the Lanham Act. So I believe that the mandate ---- But you're saying the Ninth Circuit violates the Lanham Act. Well, if the mandate ---- Don't you go to higher authority to try to convince someone of that? Well, the reason the Ninth Circuit cited a case that was for the proposition that, hey, look, the district court never had a chance to rule on this because there was no opposition. And it's a may. It's not a shall, the case cited, in support of not addressing the 00 and 172 marks. So we're back in district court. Hey, district court, let's take a look at this mandate. And, hey, here's the Lanham Act. You can't interpret the mandate to not allow the 000 and 172 back in. And that's because statutory law trumps common law. At least that's what I believe. All right. Thank you, counsel. That's it. Thank you. Thank you to both counsels. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. Okay. I'll rise. This court for this session stands adjourned.
judges: Boggs, RAWLINSON, THOMAS